IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| JEFF GRAHAM, | : | |
| Plaintiff, | : | |
| | | Case No. 3:02cv157 |
| vs. | : | |
| | | JUDGE WALTER HERBERT RICE |
| DAVID VORE, et al., | : | |
| Defendants. | : | |

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (DOC. #21); DECISION AND ENTRY OVERRULING DEFENDANTS' MOTION TO IN LIMINE (DOC. #37); CONFERENCE CALL SET

Plaintiff Jeff Graham ("Plaintiff" or "Graham") brings this litigation to obtain compensation for the losses he allegedly suffered as a result of incidents which occurred on January 19, 2002.[1]  On that date, Defendant David Cole ("Cole"), a deputy sheriff employed in the Montgomery County Sheriff's Department, was on road patrol in Jefferson Township.  At approximately 4:00 a.m., Cole drove by Plaintiff's residence at 1840 Infirmary Road.  He observed a Chevrolet truck, with its engine running and its lights on, parked in the driveway at that residence.

---

[1]Since this case comes before the Court on the Defendants' Motion for Summary Judgment (Doc. #21), the Court sets forth the facts and circumstances giving rise to it in the manner most favorable to the Plaintiff, the party against whom summary judgment has been requested.

Plaintiff was sitting in that parked vehicle, talking on a cell phone.[2]  About one hour later, Cole drove by that same location and observed the same truck still parked in the driveway, with its engine running and its lights on.

As a consequence, Cole decided to investigate, since he thought the truck might have been stolen.  Without contacting the dispatcher to determine whether that vehicle had been reported stolen, Cole got out of his cruiser, walked to the parked truck and tapped on the driver's side window.  Plaintiff rolled the window down part way and asked Cole his identity.  Cole then pulled the Plaintiff out of the truck and placed him in the rear of the police cruiser, without asking the Plaintiff for identification or giving him an opportunity to explain what he had been doing, before doing so.[3]  After he had placed the Plaintiff in the cruiser, Cole returned to the truck and searched its interior, discovering a firearm, after which he arrested Plaintiff for carrying a concealed weapon.[4]

---

[2]There is no indication that Cole then knew that the Plaintiff lived at 1840 Infirmary Road or that he was the individual seated in the truck.

[3]Cole testified during his deposition that he removed the Plaintiff from the truck, because the latter had made a shooting motion with his finger.  However, both during his deposition and in his affidavit, Plaintiff denied that he had made such a motion.

[4]During his deposition, Cole stated that he had returned to the truck to continue to investigate whether it had been stolen.  Its front door was open, and, as a consequence, at that point, Cole could see the firearm in plain view.  However, based upon the statements in Plaintiff's affidavit, which must be accepted when ruling upon Defendants' request for summary judgment, the Court concludes that the evidence raises a genuine issue of material fact as to whether Cole discovered the handgun as a result of searching the truck, as opposed to seeing it in plain view.  In particular, the Plaintiff states that he observed Cole search the truck.  In addition, he states that he had not seen a firearm in the truck while he had occupied it and that his father normally kept a handgun pushed down between the driver's seat and the console, where a person could not see it, without pushing the seat down.

After he had been arrested, Plaintiff was transported to the Montgomery County Jail, and was booked into that facility at about 6:00 a.m., on January 19th. He was initially interviewed by Pretrial Services. Subsequently, Defendants S. M. Lamb ("Lamb") and R. M. Ward ("Ward"), detectives employed in the Montgomery County Sheriff's Department, attempted to interview him. The detectives read the Miranda warnings to the Plaintiff; however, he refused to be interviewed. As a consequence, they gave up their efforts to interview him. Lamb and Ward interacted with the Defendant for no more than ten minutes. Defendant Daryl Wilson ("Wilson"), a sergeant employed in the Montgomery County Sheriff's Department, was acting as the supervisor later that day. A dispatcher told him that a number of telephone calls from various media outlets had been received, asking whether the Plaintiff, who was a professional football player, had been arrested. Wilson returned two of those telephone calls and said that he had been arrested for carrying a concealed weapon. Plaintiff was released from the Montgomery County Jail at around noon on January 19th, having spent about six hours therein. Ultimately, the Montgomery County prosecutor decided not to file charges against the Plaintiff.

Plaintiff brings this action against Cole, Lamb, Ward, Wilson and David Vore ("Vore"), the Montgomery County Sheriff. Each Defendant has been sued in both his individual and official capacity. In his Amended Complaint (Doc. #10), Plaintiff sets forth five claims for relief, to wit:[5] 1) a claim under 42 U.S.C. § 1983, alleging

---

[5]Unless otherwise indicated, the Plaintiffs claims are asserted against all Defendants. Although Plaintiff does not expressly so state, the Court assumes that he has asserted his claims against the Defendants in both their official and individual capacities.

- 3 -

that Cole violated his right under the Fourth Amendment to be free from unreasonable searches and seizures (First Claim for Relief); 2) a state law claim alleging that the actions of Cole and Wilson constituted the intentional infliction of emotional distress (Second Claim for Relief); 3) a state law claim of false imprisonment (Third Claim for Relief); 4) a claim under § 1983, alleging that the actions of Cole constituted a violation of substantive component of the Due Process Clause of the Fourteenth Amendment (Fourth Claim for Relief); and 5) a state law claim of defamation against Wilson (Fifth Claim for Relief).  This case is now before the Court on the Defendants' Motion for Summary Judgment (Doc. #21).  Although the Defendants seek summary judgment on the substance of each of Plaintiff's claims, they focus exclusively on the individual capacity aspects of those claims.  In other words, they have not argued that they are entitled to summary judgment on the official capacity aspects of Plaintiffs' claims.  As a means of analysis, the Court will initially set forth the standards it must apply whenever it rules upon a motion for summary judgment, following which it will turn to the parties' arguments in support of and in opposition to the instant such motion.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  Of course, the moving party:

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

- 4 -

Id. at 323.  See also Boretti v. Wiscomb, 930 F.2d 1150, 1156 (6th Cir. 1991) (The moving party has the "burden of showing that the pleadings, depositions, answers to interrogatories, admissions and affidavits in the record, construed favorably to the nonmoving party, do not raise a genuine issue of material fact for trial.") (quoting Gutierrez v. Lynch, 826 F.2d 1534, 1536 (6th Cir. 1987)).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)).  Thus, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial."  Talley v. Bravo Pitino Restaurant, Ltd., 61 F.3d 1241, 1245 (6th Cir. 1995).  Read together, Liberty Lobby and Celotex stand for the proposition that a party may move for summary judgment by demonstrating that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law. Fed.R.Civ.P. 50).  Street v. J.C. Bradford & Co., 886 F.2d 1472, 1478 (6th Cir. 1989).

  Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations.  It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  See also Michigan Protection and Advocacy Service, Inc. v. Babin, 18 F.3d 337, 341 (6th Cir. 1994) ("The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could

reasonably find for the plaintiff."). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. Celotex Corp., 477 U.S. at 324. Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Summary judgment shall be denied "[i]f there are … 'genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.'" Hancock v. Dodson, 958 F.2d 1367, 1374 (6th Cir. 1992) (citation omitted). Of course, in determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. Anderson, 477 U.S. at 255 (emphasis added). If the parties present conflicting evidence, a court may not decide which evidence to believe, by determining which parties' affiants are more credible; rather, credibility determinations must be left to the fact-finder. 10A Wright, Miller & Kane, Federal Practice and Procedure, § 2726. In ruling on a motion for summary judgment (in other words, in determining whether there is a genuine issue of material fact), "[a] district court is not … obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." Interroyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989), cert. denied, 494 U.S. 1091 (1990). See also L.S. Heath & Son, Inc. v. AT&T Information Systems, Inc., 9 F.3d 561 (7th Cir. 1993); Skotak v. Tenneco Resins, Inc., 953 F.2d 909, 915 n. 7 (5th Cir.), cert. denied, 506 U.S. 832 (1992)

("Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment ...."). Thus, a court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties.

As is indicated, the Defendants seek summary judgment on all claims the Plaintiff has set forth in his Amended Complaint (Doc. #10). As a means of analysis, the Court will address the Defendants' arguments in a manner that differs from that in which they appear in Defendants' motion.

1. Did Cole Violate the Plaintiff's Rights under the Fourth Amendment or Falsely Imprison Him?

Defendants contend that they are entitled to summary judgment on Plaintiff's First and Third Claims for Relief, respectively, a claim under § 1983, predicated upon Cole's alleged deprivation of his rights under the Fourth Amendment, and a state law claim of false imprisonment, because Cole neither violated his (Graham's) rights under the Fourth Amendment nor falsely imprisoned him.[6] As a means of analysis, the Court will discuss the Defendants' request for

---

[6] The Defendants also move for summary judgment on Plaintiff's Fourth Claim for Relief, a claim under § 1983 predicated upon the assertion that Cole's actions on January 19, 2002, violated the substantive component of the Due Process Clause of the Fourteenth Amendment. The Defendants are entitled to summary judgment on the Plaintiff's Fourth Claim for Relief. The United States Supreme Court has held that, when a specific constitutional guarantee has allegedly been infringed by an officer's challenged actions, the plaintiff's claim is governed by that specific

summary judgment on those two claims in the order in which they appear in the Amended Complaint.

The Defendants argue that they are entitled to summary judgment on Plaintiff's First Claim for Relief, because the evidence fails to raise a genuine issue of material fact as to whether Cole violated Plaintiff's Fourth Amendment rights. This Court does not agree.  Construing the evidence in the manner most favorable to the Plaintiff, the party against whom summary judgment is sought, Cole knocked on the window of the truck in which the Plaintiff was seated.  Plaintiff rolled down the window and asked Cole, who did not appear to be dressed in the clothing of a police officer, who he was.  Cole then removed the Defendant from his vehicle and, for no reason, placed him in the back of the cruiser.  In other words, Cole had neither reasonable suspicion nor probable cause to believe that the Plaintiff had been involved in criminal activity.  Thereafter, the deputy returned to Plaintiff's truck and searched it without probable cause.  Accordingly, the Court overrules the Defendants' Motion for Summary Judgment (Doc. #21), as it relates to the First Claim for Relief in Plaintiff's Amended Complaint (Doc. #10).[7]

---

constitutional guarantee, rather than by substantive due process.  Graham v. Connor, 490 U.S. 386 (1989).  Since Cole's alleged unconstitutional search and seizure are governed by the specific constitutional guarantee found in the Fourth Amendment, his challenged actions cannot be governed by the substantive component of the Due Process Clause of the Fourteenth Amendment.

[7]If Plaintiff contends that Cole violated his rights under the Fourth Amendment by entering his driveway, the Court does not agree.  Courts have held that an officer does not violate the Fourth Amendment by entering the property of another, if he does nothing more observe what can be seen from a public street, since the other did not have a reasonable expectation of privacy in what could be seen from the street.  United States v. Reyes, 283 F.3d 446( 2d Cir. 2002) (and cases discussed therein).  Since Cole could see the Plaintiff sitting in a parked truck with the engine running, as he drove by Plaintiff's residence, the latter did have a reasonable

A claim for false imprisonment under Ohio law requires proof that the plaintiff was intentionally confined within limited area, for any appreciable time, against his will and without lawful justification. See e.g., Feliciano v. Kreiger, 50 Ohio St.2d 69, 362 N.E.2d 646 (1977); Evans v. Smith, 97 Ohio App.3d 59, 70, 646 N.E.2d 217, 224 (1994). Simply stated, construing the evidence in the manner most favorable to the Plaintiff, Cole did not have probable cause, reasonable suspicion or any other justification making lawful his detention of the Plaintiff in the rear of his police cruiser. Therefore, the Court overrules the Defendants' Motion for Summary Judgment (Doc. #21), as it relates to Plaintiff's Fourth Claim for Relief.

2. Are Lamb and Ward Entitled to Summary Judgment?

Defendants argue that Lamb and Ward are entitled to summary judgment, because there is no evidence that they engaged in any actionable conduct, given that they merely attempted to interview the Plaintiff after he had been arrested, and ceased those efforts after he indicated that he was unwilling to speak with them. Nevertheless, Plaintiff argues that Lamb and Ward can be held liable for falsely imprisoning him, because they possessed an arrest report at the time that they attempted to interview him, which indicated that he had been arrested without probable cause and that, therefore, he was being detained without lawful justification. This Court cannot agree. As an initial matter, the Plaintiff has offered no evidence that Lamb and/or Ward detained him. At the time they attempted to

---

expectation of privacy in what Cole observed when he knocked on the window of the truck.

interview the Plaintiff, he had been arrested by another officer and booked into the Montgomery County Jail.  There is no evidence that Lamb and Ward had the authority to release the Plaintiff, if they discovered that his arrest had occurred without probable cause.  Moreover, even if the evidence raised a genuine issue of material fact that they possessed such authority, the evidence does not raise a genuine issue of material fact that they were aware that Plaintiff had been arrested without probable cause.  The report in question clearly states that Cole had discovered a handgun in the vehicle in which Plaintiff had been sitting, which established probable cause to believe that he had violated Ohio Revised Code § 2923.12.  Accordingly, the Court sustains Defendants' Motion for Summary Judgment (Doc. #21), as it relates to all claims Plaintiff has asserted against Lamb and Ward.

3.  Is Wilson Entitled to Summary Judgment?

Defendants argue that Wilson is entitled to summary judgment on Plaintiff's defamation claim, the Fifth Claim for Relief.  That claim is predicated upon the statements Wilson made to media outlets on January 19, 2002, when he returned two telephone calls.  During those telephone calls, Wilson said that Plaintiff had been arrested for carrying a concealed weapon.  Defendants base their request for summary judgment on this claim on the assertion that Wilson's statements to the media outlets were true.  Under Ohio law, truth is a complete defense to actions for libel or slander.  Ohio Rev. Code § 2739.02; Society Bank, N.A. v. Kellar, 63 Ohio App.3d 583, 588, 579 N.E.2d 717, 720 (1989); Pease Co. v. Huntington Natl. Bank, 24 Ohio App.3d 227, 232, 495 N.E.2d 45, 51 (1985).

Although it cannot be questioned that the Plaintiff had been arrested for carrying a concealed weapon, Graham argues that Defendants are not entitled to summary judgment on this claim.  In particular, he relies upon Wilson's deposition testimony that he did not remember whether he had made a distinction during his two telephone calls, between the Plaintiff's arrest for carrying a concealed weapon and his being charged with that offense.  Wilson Dep. at 36.  Although Wilson's testimony may raise a genuine issue of material fact as to whether he made such a distinction, it does not raise such a fact question as to whether his statement to the media that Plaintiff had been arrested was true.  Simply stated, since Plaintiff has failed to submit any evidence that Wilson told the media anything other than the Plaintiff had been arrested for carrying a concealed weapon or that said statement was not true, the Court sustains Defendants' Motion for Summary Judgment (Doc. #21), as it relates to Plaintiff's Fifth Claim for Relief, a claim that Plaintiff has asserted against Wilson alone.[8]

4.  Is Vore Entitled to Summary Judgment?

Defendants argue that Vore is entitled to summary judgment, because the evidence fails to raise a genuine issue of material fact as to whether he can be held liable under a supervisory liability theory.  This Court agrees.  As an initial matter, it bears emphasis that there is no evidence that Vore, as opposed to Montgomery County, was the employer of the other Defendants, i.e., Cole, Wilson, Lamb and

---

[8] If Plaintiff is seeking to impose liability upon Wilson for any of his other claims, the Court concludes that he is entitled to summary judgment on same, since there is no evidence that he was in any way involved in the incidents giving rise to those claims.

Ward.  Therefore, there is no basis for imposing vicarious, personal liability upon Vore under any of the Plaintiff's state law claims.[9]  Turning to Plaintiff's remaining § 1983 claim, the First Claim for Relief against Cole, the Sixth Circuit has repeatedly held that a supervisor cannot be held liable under § 1983, in the absence of evidence that he "participated, encouraged, authorized or acquiesced in the [allegedly] offending conduct."  Doe v. City of Roseville, 296 F.3d 431, 440 (6th Cir. 2002).  Herein, there is no evidence to support the proposition that Vore participated, encouraged, authorized or acquiesced in Cole's seizure of the Plaintiff or his search of the truck.  Accordingly, the Court sustains the Defendants' Motion for Summary Judgment (Doc. #21), as it relates to the argument that Vore is entitled to summary judgment on Plaintiff's supervisory liability claims.[10]

5.  Are Defendants Entitled to Summary Judgment on Plaintiff's Claim of Intentional Infliction of Emotional Distress?

With his Second Claim for Relief, the Plaintiff sets forth a claim of intentional infliction of emotional distress.  In Yeager v. Local Union 20, 6 Ohio St.3d 369, 453 N.E.2d 666 (1983), the Ohio Supreme Court held, in the syllabus:

---

[9]Moreover, there is no evidence that Vore was personally involved in any of the actions which gave rise the the state law claims in Plaintiff's Amended Complaint (Doc. #10).

[10]In his memorandum in opposition, Plaintiff argues that the Defendants are not entitled to summary judgment on the official capacity claims against Vore, because the evidence raises a genuine issue of material fact as to whether there was a deliberately indifferent failure to train sheriff's deputies.  Since the Defendants have not moved for summary judgment on the official capacity claims, it is not necessary to address that question.

> One who by extreme and outrageous conduct intentionally or recklessly causes serious emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm. (Bartow v. Smith, 149 Ohio St. 301, 78 N.E.2d 735, overruled.)

Therein, the Ohio Supreme Court elaborated upon what would be deemed to constitute extreme and outrageous conduct:

> With respect to the requirement that the conduct alleged be "extreme and outrageous," we find comment d to Section 46 of the Restatement, supra, at 73, to be instructive in describing this standard:
> " * * * It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'
> "The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of a good deal of filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where some one's feelings are hurt. There must still be freedom to express an unflattering opinion, and some safety valve must be left through which irascible tempers may blow off relatively harmless steam. See Magruder, Mental and Emotional Disturbance in the Law of Torts, [49] Harvard Law Review 1033, 1053 (1936). * * * "

Id. at 374-75, 453 N.E.2d at 671-72.

Herein, the Court has sustained the Defendants' motion as it relates to all claims against Defendants in their individual capacities, except for his First and Third Claims for Relief against Cole. Therefore, there is no basis for holding any

Defendant other than Cole liable for intentional infliction of emotional distress. Turning to Cole and construing the evidence in the manner most favorable to the Plaintiff, the jury could find that Cole's conduct did exceed the bounds of human decency. So construing the evidence, the jury could find that Cole entered Plaintiff's property, and seized him from the vehicle in which he had been seated and placed him in the back of a police cruiser, for no reason, and, then, searched that vehicle without justification and falsely imprisoned him.

Accordingly, the Court sustains in part and overrules in part the Defendants' Motion for Summary Judgment (Doc. #21), as it relates to the Second Claim for Relief. In particular, that motion is overruled as it pertains to the Second Claim for Relief against Cole and otherwise sustained as it relates to that claim against all other Defendants.

Based upon the foregoing, the Court sustains in part and overrules in part the Defendants' Motion for Summary Judgment (Doc. #21).[11] That motion is overruled as it relates to Plaintiff's First, Second and Third Claims for Relief against

---

[11]Also pending is Defendants' Motion in Limine (Doc. #37), with which they seek to prevent Plaintiff from calling any individual to testify whom he did not identify as a witness. Since the trial of this matter has been continued, the Court will establish new dates leading to the resolution of this litigation, which will include a new date for the disclosure of witnesses. Accordingly, the Court overrules Defendants' Motion in Limine.

Cole, in both his individual and official capacities.[12]  Otherwise, that motion is sustained.

Counsel should take note that the Court has scheduled a telephone conference call on Tuesday, October 4, 2005, at 8:30 a.m., for the purpose of selecting a new trial date for this litigation.

September 20, 2005

/s/ Walter Herbert Rice<br>WALTER HERBERT RICE, JUDGE<br>UNITED STATES DISTRICT COURT

Copies to:

Counsel of Record.

---

[12]As is indicated above, Plaintiff has sued all Defendants in both their official and individual capacities.  A claim under § 1983 against a government employee in his official capacity is a claim against the governmental employer.  Kentucky v. Graham, 473 U.S. 159 (1985).  Montgomery County, Cole's employer, has not moved for summary judgment on the official capacity aspect of the First Claim for Relief, predicated upon Cole's actions.  However, since  official-capacity suits are treated as suits against the governmental employer itself (id. at 166), this Court will permit Montgomery County to be substituted for the Plaintiff's official capacity claim against Cole.  The Court seriously questions whether the same dichotomy is recognized under Ohio law.  In other words, the Court questions whether a false imprisonment claim against a deputy sheriff in his official capacity is treated as a claim against Montgomery County itself.  Nevertheless, since that argument was not raised in the Defendants' motion, the Court does not resolve the issue herein.